UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER P. HITCHCOCK,** | ) | CASE NO.1:22CV2100 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | OPINION AND ORDER |
| **EFRAIM BRODY, ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motions for Summary Judgment by Plaintiff Geauga County Treasurer, Christopher P. Hitchcock. (ECF # 64), the United States of America, ("U.S.") (ECF # 66) and the Amended Motion for Summary Judgment of Defendants Efraim Brody, Gitel Braude, Gary Waxman and Diane Waxman. (ECF # 70). For the following reasons, the Court grants Geauga's Motion in accordance with the parties' stipulation of lien positions, denies the U.S.'s Motion and grants the Motion of Defendants Brody, Braude and the Waxmans.

**Background Facts**

On October 20, 2022, Plaintiff Christopher P. Hitchcock, in his role as Treasurer for Geauga County, Ohio, filed his Complaint in Foreclosure with the Geauga County Court of Common Pleas. The case was removed to United States District Court for the Northern District

of Ohio on November 21, 2022 because the U.S was named as a Defendant.

In his Complaint, Plaintiff alleges that a delinquent Land Tax Certificate was filed by the Geauga County Auditor on property with the Permanent Parcel No.'s of 26-213853 and 26-213868 and delivered to the Geauga County Prosecutor. At the filing of the Complaint, the amount of taxes, interest and penalties amounted to $251,077.11. Plaintiff alleges Geauga County has a valid first lien on the property and that the amount assessed has been due and owing for over one year.

Plaintiff names in his Complaint all parties who have or claim to have an interest in or lien upon the subject property. Plaintiff seeks judgment for the amount of money due and unpaid on the Delinquent Land Tax Certificate, that the amounts owed Geauga are a first and valid lien that should be enforced and upon which the lien should be foreclosed. Plaintiff requests judgment in the amount owed for unpaid taxes and the costs of this litigation and payment be ordered prior to the Entry of Confirmation of Sale. Plaintiff asks the Court to order anyone who claims an interest in the property to establish their right or be forever barred from pursuing that claimed interest. Finally, Plaintiff asks the Court to order the sale of the property, issue an order of sale to the Sheriff and order the Sheriff to issue a Report of Sale.

The U.S. filed an Answer, Cross and Counterclaim to Plaintiff's Complaint. According to the U.S. it has an interest in the proceeds of the sale of the subject property arising from the income tax liabilities of Gary Waxman and these attach to the subject property via Waxman's equitable interest in the property. Defendants Efraim Brody and Gitel Braude, current title holders of the subject property, deny the Waxmans have any interest in the subject property and move for summary judgment on the U.S.'s claim.

**Background Facts**

The facts of this case are largely undisputed. The U.S. has tax liens on Gary Waxman dating back to 2006 and first recorded in 2012. The U.S. filed suit against Waxman in the Southern District of Florida in 2018 for his unpaid income taxes. The U.S obtained a default judgment in the Florida case for $1,386,734.15 against Waxman. In 2001, the subject property at 14545 County Line Road was owned by 14545 County Line Road, LLC of which Gary Waxman was a member. It was transferred to Waxman and his wife Diane Waxman. In 2006, Waxman granted a mortgage on the property to Flagstar Bank, FSB. In 2009, Flagstar brought a foreclosure action on the subject property. The U.S. was not a named party in the foreclosure action. In 2011, the foreclosure action was stayed when Gary Waxman filed for bankruptcy. The stay was subsequently lifted and the foreclosure action resumed. As part of the foreclosure action the property was appraised at $2,145,000.00.

In 2013, a Final Judicial Report was filed in the foreclosure action identifying the U.S.'s Notice of Federal Tax Lien. The U.S. was not added as a party to the foreclosure action. That same year the court presiding over the foreclosure action entered a judgment against both Gary and Diane Waxman in the amount of $4,591,088.49 plus interest and notice of a foreclosure sale was entered. Again, the U.S. was not provided notice of the sale. The sale was then stayed when Diane Waxman filed for bankruptcy. After Diane Waxman's bankruptcy action was dismissed a second foreclosure sale was scheduled for 2014. Again, the U.S. was not notified of the sale, however, this second sale was cancelled when Gary Waxman filed another bankruptcy action. Waxman's bankruptcy was dismissed and foreclosure sale resumed only to be stayed yet again when the bankruptcy action was reinstated.

3

In 2016, Defendant Efraim Brody, through 14545 County Line Rd., LLC., purchased the judgment against the Waxmans for $2,102,083.50.  14545 County Line Rd. LLC., moved to substitute itself as the plaintiff in the foreclosure action which was granted by the court.

A third foreclosure sale was scheduled for December 8, 2016, after Waxman's second bankruptcy was dismissed but the U.S. was not notified.  The sale proceeded and 14545 County Line Rd. LLC., purchased the property at sale which was confirmed by the court on March 1, 2017.  As a result of the sale, the court cancelled a number of liens and mortgages but the U.S. lien was not cancelled.  In 2017, 14545 County Line Rd, LLC., transferred the property to Brody by quit claim deed.  Since 2017, Efraim Brody and Gitel Braude have been the title owners of the subject property.  The U.S. contends its liens were not discharged in either the foreclosure sale nor the transfer to Brody as Waxman still possesses an equitable ownership interest in the subject property.

The U.S. filed tax liens on the property in 2012 and a judgment lien on the property in 2020 but released its liens in 2023.  New liens were filed in December 2023 and January 2024 after the sale of the subject property.

On December 23, 2024, Hitchcock filed his Motion for Summary Judgment alleging Brody is delinquent in property taxes on the subject property in the amount of $403,526.49 and that all other lien holders' interests are subordinate to Hitchcock's.

The U.S filed its own Motion for Summary Judgment on January 9, 2025, followed shortly by an Amended Motion for Summary Judgment by Efraim Brody, Gitel Braude and Gary and Diane Waxman.  Also, the U.S. filed a Motion for Default Judgment against General Electric Capital Corp.  General Electric has failed to Answer, oppose or otherwise respond to the United

4

States Cross-claim or Motion for Default.  The Court granted the U.S.'s Default Motion in May of 2025.

**Hitchcock's Motion for Summary Judgment**

The only party challenging Hitchcock's Motion is the U.S. and only in part.  The U. S. does not oppose Hitchcock's right to foreclose its county tax liens.  The U.S's sole point in filing a response to Hitchcock's motion is to challenge Hitchcock's representation that junior priority lienholder's are not entitled to distribution.  Thus, there is no dispute that Hitchcock is entitled to foreclose on the tax liens and that Geauga County has first priority in the proceeds of the sale.   In fact, the parties have further stipulated to priority positions with the exception of the dispute between the U.S. and the individual claimants, Brody, Braude and the Waxmans.  Moreover, the attached affidavit of Geauga County Deputy Treasurer Donna Borsi attests that there is due and owing unpaid real property taxes on properties 26-213853 and 26-213868 in an amount of $403,526.49.  There is no argument or evidence opposing Plaintiff's right to foreclose, its priority position or the amount owed.  Therefore, the Court grants Hitchcock's Motion for Summary Judgment as Hitchcock has first priority lien on the subject property and is entitled to judgment in the amount of $403,526.49.

Turning now to the contested portion of the case is the U.S's argument that its tax lien attaches to the subject property. The U.S. made two arguments in support of its Motion.  First, the U.S. argues that its tax liens on the subject property remained even after the prior foreclosure sale.  Second, that its tax liens attach to the subject property due to the Waxmans' equitable interest in the same.  In its Reply brief the U.S. abandoned its lien tracing theory and relies solely on its equitable interest argument.

**U.S.'s Motion**

According to its Motion, the U.S. obtained a judgment against Gary Waxman in the Southern District of Florida for unpaid federal income taxes for the tax years 2004, 2007, 2010, 2013, 2014 and 2016.  The U.S. filed Notice of Federal Tax Lien with the Geauga County Recorder's office on May 14, 2012.   Even though it subsequently revoked and reinstated its liens after the subsequent foreclosure sale and quitclaim deed to Brody, the U.S. argues its interest still applies as Waxman holds an equitable interest in the subject property.

The U.S. argues that Waxman and Brody are friends and do business together with Brody investing $2.5 million dollars through his company Jerusareka Investments, in Fluid Dynamics, a Waxman company, in 2011.  Moreover, according to the U.S., Brody's purchase of the judgment against the Waxmans, his substitution as plaintiff in the prior foreclosure action and his purchase of the subject property were all part of a plan between him and the Waxmans.   Brody obtained legal title in the property to use as collateral for money owed him by Waxman.  As part of their agreement, Brody allows the Waxmans to continue living in the subject property and pay for the property's expenses and maintenance.  Brody does not make the Waxmans pay rent for residing in the property.  Brody does not use the subject property and does not keep any personal belongings there.

The U.S. further contends that Waxman paid the property tax and entered into written agreements with the county to pay the delinquent property taxes.  In 2017, Brody received $2 million dollars by granting a mortgage on the subject property to CFBank.  Waxman, as Brody's attorney in fact, secured an open-end mortgage on the subject property.  The Waxmans pay the bills for the property including heating, electricity, landscaping, plumbing, snowplowing,

6

insurance and homeowners association fees. Finally, whenever Brody makes a payment for expenses on the property he adds that payment to the total amount owed him by Waxman.

At the outset, the parties stipulate that in the event of a sale, the proceeds would be distributed as follows: first, costs of the sale, second, Geauga County Treasurer for the full amount of its lien, third, CFBank for full amount of its lien, fourth, Huntington Bank for full amount of its lien. Thus, the only contested position is fifth position between Brody and the United States.

The U.S. claims Waxman retains an equitable interest under a nominee theory despite Brody's and Braude's legal claim to title. Thus, the U.S. argues its priority position is superior to the Waxmans', Brody's or Braude's because its lien attaches to the Waxmans' equitable interest in the subject property.

Defendants Braude, Brody and the Waxmans oppose the U.S.'s Motion. According to the Individual Defendants, the U.S. recorded its tax liens against Waxman on May 14, 2012. On January 15, 2020, the Southern District of Florida entered a judgment against the Waxmans for $1,386,734.15 in favor of the U.S. The U.S. then filed a judgment lien on 14545 County Line Rd property but the Waxmans no longer owned the property. The U.S. failed to file its lien at the time the foreclosure suit was filed. That action was filed on February 10, 2009 while the U.S. recorded liens on May 14, 2012. Moreover, the U.S. revoked its release; but under applicable law the revocation becomes effective on the date its mailed to the taxpayer. Thus, Individual Defendants claim the U.S. has a valid tax lien against the Waxmans but its priority date runs from April 11, 2023, which is the date it filed its revocation of certificate of release. However, it does not attach to the subject property because the Waxmans had no interest in the subject

property at that date and Ohio law does not recognize an equitable interest in real property under a nominee theory nor under the facts at issue in this case.

**Individual Defendants Amended Motion for Summary Judgment**

According to the Individual Defendants' timeline, the U.S. rendered its tax assessments against Waxman in 2006. Flagstar issued its foreclosure action against Waxman in 2009. Gary Waxman filed his bankruptcy action in 2011 and was discharged in 2012. The U.S. recorded its tax lien in Geauga County in 2012. Judgment was rendered against Waxman and in favor of Flagstar in the amount of $4,591,088.49 plus interest. The property was appraised at the time of the judgment at $2,145,000.00. Flagstar assigned its judgment to 14545 County Line Rd., LLC. for $2,102,083.50 in 2017. That same year, 14545 transferred its interest to Efraim Brody by quit claim deed. Since April 2017 Brody and Gaude have been the title owners of the subject property. Bordy and Gaude took out two mortgages on the property for approximately $2,480,000.00. On January 30, 2023 and April 11, 2023, the U.S. released its liens against the subject property. New tax liens were filed by the U.S. on the subject property on December 13, 2023 and January 24, 2024 as recorded by the Geauga County Recorders Office.

According to the Individual Defendants, 26 U.S.C. § 6325 reads that when the U.S. revokes a tax lien it conclusively discharges the lien and the real property is released from such lien. There is an exception though. Under § 6325(f), if a release were entered mistakenly or improvidently it may be revoked. However, the lien is only effective on the date notice of the revocation is mailed to the tax payer. There is no dispute that the U.S. revoked its discharge of liens on January 30, 2023 and April 11, 2023. This means that the U.S. lien priority runs from the date of the revocations which fall well after Brody's purchase of the liens and the subsequent

8

mortgages. However, because Waxman did not own the property at the time of the revocation, Defendants move for judgment because they contend the Waxmans had no interest in the property at that time because the sale occurred in 2017.

**Nominee and Equitable Interest in Real Property**

Having abandoned its lien tracing argument, the U.S.'s sole claim to a lien on the Subject Property stems from its argument that Waxman possesses an equitable interest under the nominee theory in the subject property. U.S. tax liens are designed to "reach every interest in property that a taxpayer may have." *United States vs. Nat'l Bank of Commerce*, 472 U.S. 713, 719-720 (1985). Moreover, the U.S. cites the Court to the Supreme Court case of *United States vs. G.M. Leasing Corp.* 429 U.S. 338, 350-51 (1977) which acknowledged that a tax lien against a taxpayer may attach to property held by an alter ego of the taxpayer. According to the U.S.'s nominee theory, Brody and Braude are merely nominees of the Waxmans who are the beneficial owners of the subject property despite Brody's and Braude's legal title to the same. The U.S. argues that Ohio law recognizes a person may possess an equitable interest in property even when someone else possesses legal title to the same. Importantly, the Supreme Court instructed courts to "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" within the compass of the federal tax lien legislation." *Drye v. United States,* 528 U.S. 49, 58 (1999).

Both the U.S. and the Individual Defendants acknowledge there is a split in the Sixth Circuit over the issue of whether Ohio recognizes an equitable interest in property under the nominee doctrine. In *Nantucket Village Dev. Co. v. United States,* No 5:99CV 230, 2001 WL

9

169316 (N.D. Ohio Jan. 9, 2001), the district court held that Ohio law confers an equitable interest in real property to one who makes out-of-pocket expenditures for property repairs, pays utility expenses and shares responsibility for monthly mortgage payments even though someone else holds the title. Citing *Ohio Div. of Real Est. v. Vantell,* 128 Ohio App. 3d 410, 412, 715 N.E.2d 217, 218 (1998). According to the U.S., the evidence before the Court demonstrates that the Waxmans have an equitable interest in the subject property. The Waxmans retained full possession of the property, reside in the property, continue to enjoy the full benefits of the property, do not pay rent to Brody, pay real estate taxes and utilities on the property and pay costs of repair and upkeep of the property. Moreover, although the Waxmans do not pay the mortgage on the property, Brody testified that anytime he makes a mortgage payment he adds the expense to the pot of money owed him by the Waxmans. Thus, the Waxmans will pay the mortgage on the property.

In contrast, Defendants contend Ohio law does not recognize the nominee doctrine. In *United States v. Toler,* 666 F. Supp.2d 872 (N.D Ohio 2009), the district court found there was no Ohio authority supporting a nominee theory and precluded the U.S. from proceeding on a nominee theory solely. Thus, there is a split within this Circuit on whether Ohio law permits nominee liability.

"The ultimate inquiry is whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." *United States v. Long,* 121 F. Supp. 3d 763, 778 (N.D. Ohio 2014) citing *Holman v. United States,* 505 F.3d 1060, 1065 (10th Cir.2007). The district court in *Long* agreed with the court in *Nantucket.* "Reviewing the decisions of federal courts in Ohio, as

10

discussed above, this court agrees with the decision in *Nantucket Village*, that the greater weight of federal authority in Ohio indicates that the government can bring a cause of action against a nominee of a tax-debtor, and thus federal tax liens on the property can be imposed." *Long,* 121 F. Supp. 3d at778.

There does not seem to be any dispute that no Ohio state court has held that Ohio recognizes a nominee theory regarding an interest in property that applies under these circumstances.  Instead, the *Nantucket* and *Long* courts have held that an equitable interest in property is for all intent and purposes the same as a nominee theory under Ohio law and there is no reason to invoke the term "nominee" when an equitable property interest applies.  Problem is, the courts that relied on Ohio law for such a proposition did not fully consider underlying Ohio authority and the holdings therein.

In a very recent case, *United States v. David,* No 1:22cv638, 2025 WL 1707656, (S.D. Ohio June 18, 2025) the Southern District of Ohio ruled that Ohio does not recognize the nominee theory of liability.

The *David* court in a thorough and well-reasoned opinion considered the holding in *Nantucket*.  As its basis for finding Ohio supports an equitable ownership theory the *Nantucket* court relied on the Ohio appellate decision in *Flint v. Holbrook,* 80 Ohio App.3d 21 (Ohio App. 2d dist.  1992). .  In that case, the *Nantucket* court quoted *Flint* as follows, "One who is recognized in equity as the owner of property because the real and beneficial use and title belong to him, although the bare legal title is vested in another...There may therefore be two Owners in respect of the same property, one the nominal or legal owner, the other the beneficial or equitable owner." *Nantucket,* 2001 WL 169316 *9.

11

> However, as pointed out by the court in *David*, the full quote from *Flint* reads as follows:
>
> One who is recognized in equity as the owner of property, because the real and beneficial use and title belonged to him, although the bare legal title is vested in another..." ***One who has a present title in and which wil ripen into legal ownership upon the performance of conditions subsequent.***  There may therefore be two 'owners' in respect of the same property, one the nominal or legal owner, the other the beneficial or equitable owner." (Emphasis added).

*Flint,* 80 Ohio App.3d  at 27.

In the matter before the Court, the U.S. has failed to point to any evidence that the Waxmans' interest will ripen into legal ownership upon the performance of any specified condition in the future.

Furthermore, as the court in *David* pointed out, the interest at issue in *Flint* was a land installment contract.  "A 'land installment contract' is an executory agreement whereby the purchaser, i.e., the vendee, agrees to pay the purchase price and is vested with equitable ownership, while the vendor retains bare legal title in the property to secure payment of the purchase price." *Sarbaugh v. Miller*, 2025-Ohio-382, 263 N.E.3d 981 citing Ohio Rev. Code Ann. § 5313.01(A).  "In other words, the vendor in a land installment contract holds legal title in the property as security, while the vendee holds a beneficial interest in the property, which upon completion of the terms of the contract ripens into full ownership and legal title." *David,* 2025 WL 1707656 *9.

The facts of this case do not implicate a land installment contract as there is no evidence that there is any contemplated sale of the subject property from Brody and Gaude to the Waxmans.  As such the *David* court rejected the U.S. argument that a nominee theory is the equivalent of equitable ownership under Ohio law.

12

The U.S. cites to the Ohio case of *Ohio Dev. Of Real Est. v. Vantell,* 128 Ohio App.3d 410, 715 N.E.2d 217 (Ohio Ct. App. 1998) for the proposition that Ohio recognizes a nominee theory where "under Ohio law, one may hold an equitable interest in property where they make out-of-pocket expenditures to complete repairs to property, pay utility expenses and share responsibility for monthly mortgage payments despite the fact that another holds the title." But as the *David* court noted, *Vantell* involved a verbal joint venture agreement between a real estate broker and an investor. "The purpose of the venture was to improve the property and resell it at a profit that both parties would share equally. All profits would be placed in the parties' joint checking account." *Vantell* at 412.

Under the terms of the joint venture agreement, Vantell supplied the $10,000 down payment, gave a mortgage for the balance, and acquired title to the property, whereas Detwiler, the investor, arranged and supervised all necessary improvements and repairs to the property. Both Vantell and Detwiler split the costs of the property regarding mortgage payments, taxes, insurance, improvements and repairs. Vantell testified that he considered Detwiler a co-owner of the property.

The Ohio Real Estate Commission suspended Vantell's license allegedly because Vantell authorized Detwiler to act as the agent of Vantell despite Detwiler's lack of a license, which violated Ohio statutory law. A common pleas court affirmed the suspension but on appeal the Ohio Appellate Court reversed, finding that the Ohio statute at issue exempted actual owners of the property and those individuals who acquired an interest in the property. The *Vantell* court found that Detwiler had acquired an interest through the joint venture agreement and therefore, did not violate Ohio law.

Here, the Waxmans hold no similar interest in the subject property. There is no evidence of an agreement, verbal or written, that confers upon the Waxmans an ownership interest.

In short, the Court holds that the better weight of authority shows that Ohio does not recognize a nominee theory of interest in property, nor do the equitable interests relied on by the courts in *Nantucket* and *Long* support the U.S.'s theory that the Waxmans hold an equitable interest in the subject property merely because they live there and pay the upkeep and utility expenses.

Consequently, the Court grants the Individual Defendants' Amended Motion for Summary Judgment and denies the U.S.'s Motion for Summary Judgment as the Waxmans hold no equitable interest in the subject property such that the U.S.'s tax liens may attach thereto.[1]

Therefore, for the foregoing reasons the Court grants Hitchcock's Motion for Summary Judgment in the amount of $403,526.49 for unpaid real property taxes. The Court further finds that Geauga County Treasurer has the first lien on the subject property.

Finally, this case was removed by the U.S. pursuant to 28 U.S.C. § 1447(c) which

---

[1] Even if the Court were to hold that *Nantucket* is the stronger authority a review of the factors relied on by that court would still militate against the Waxmans holding an equitable interest. In *Nantucket*, the district court considered factors used by courts outside Ohio to determine whether a party is a nominee; these factors include:
1) whether the transferee gave consideration for the property
2) whether the transferor believes, or reasonably should believe, that he is likely to face debts beyond his ability to pay;
3) whether the transferor actually intends to mislead his creditors;
4) whether the transfer is concealed from creditors
5) whether the transferor retained possession of the property; and
6) whether the transferor continued to enjoy the benefits of the property.

The factors presume a transferor/transferee relationship between the actual owner and the alleged holder of an equitable interest. Here, the Waxmans were not the transferor because Brody acquired the property via a Sheriff's sale and subsequent quitclaim deed.

provides in part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

As a result of the Court's summary judgment ruling the U.S. lacks an interest in the subject property and there is no federal question presented for adjudication.

28 U.S.C. § 1367 grants the district courts supplemental jurisdiction over state claims related to claims over which the district courts possess original jurisdiction. However, a district court may decline to exercise supplemental jurisdiction over such related claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Therefore, because there is no longer a federal defendant, the Court orders the parties to show cause no later than October 3, 2025, why the case should not be remanded to Geauga County Court of Common Pleas for further proceedings.

**IT IS SO ORDERED.**

**DATE: 9/29/2025**         s/Christopher A. Boyko
                           **CHRISTOPHER A. BOYKO**
                           **United States District Judge**